# H. A. DREVES COMPANY v. BAD AXE GRAIN COMPANY AND OTHERS.

## MERCHANTS NATIONAL BANK OF ST. PAUL, GARNISHEE, SECOND NATIONAL BANK OF SAGINAW, MICHIGAN, INTERVENER-APPELLANT.[1]

June 10, 1921.

No. 22,289.

**Garnishment — finding against intervener sustained.**

Testimony considered and *held* sufficient to support a finding that the plaintiff was the owner of the fund in the possession of the garnishee and that intervener had no interest therein, and that the complaint in intervention be dismissed upon the merits.

Action in the district court for Ramsey county to recover $6,308.84 upon a carload of beans. The Merchants National Bank of St. Paul was summoned as garnishee and disclosed in its hands $2,810.60, which was claimed by the Second National Bank of Saginaw, Michigan, by its complaint in intervention. The case was tried before Hanft, J., who made findings and ordered judgment against defendant company for $3,047.93. and that the sum of $2,810.60, in the hands of the garnishee should be used in part payment of the judgment, dismissed the intervener's complaint in intervention upon the merits and with prejudice. From an order denying its motion to amend the findings, conclusions of law and order for judgment, intervener appealed. Affirmed.

*Butler, Mitchell & Doherty,* for appellant.
*Stringer & Seymour,* for respondent.

Quinn, J.

This is an appeal from an order of the district court of Ramsey

[1]Reported in 183 N. W. 285.
149 M.—16.

county denying intervener's motion for a new trial.

Plaintiff is a corporation engaged in handling food stuffs at St. Paul, Minnesota; defendant is a grain dealer at Bad Axe, Michigan, garnishee is a national bank at St. Paul, and the intervener is a national bank at Saginaw, Michigan. In February, 1918, the defendant sold and later shipped from its place of business by rail to the plaintiff at St. Paul, a carload of beans. At the time of shipment defendant drew a draft upon plaintiff for $7,810.60 to cover the purchase price of the beans, attached it to an order bill of lading, transferred the same to intervener and received full credit therefor. The intervener forwarded the same to the Merchants National Bank of St. Paul for collection in the usual course of business. When the car arrived at St. Paul plaintiff refused to accept the beans upon the ground that they were not according to contract. On May 6, Mr. Vye, the executive officer of the Federal Food Commission for the state of Minnesota, having learned that the car was standing upon track, requested plaintiff to unload the same so as to conserve the beans and release the car, assuming to act under the war powers conferred by the Lever Act. Plaintiff informed the officer that it refused to accept the beans or to unload the car, as the beans did not come up to the requirements of its contract. The officer then informed plaintiff that he would expect the plaintiff to comply with the request, pay the money into the bank, procure the bill of lading and unload the car, at the same time stating that the bank would hold the money until the controversy was adjusted. On the same day the officer wrote the bank that it was necessary to require the beans to be unloaded, saying: "You are also directed to hold the proceeds of this draft in your possession subject to our orders, pending a settlement and further disposition of the controversy." Plaintiff then paid the amount of the draft into the bank, obtained the bill of lading and took possession of the beans. Plaintiff's vice-president testified that: "I told him (the bank teller) that the food administration had ordered us to take this money to the bank and place it there on deposit so that we could secure the bill of lading and unload this car of beans, and that this amount of money was to be held until the controversy between ourselves and the Bad Axe Grain Company could be settled, and I further told him not to let any of the money get out

of the bank's hands unless he had our instructions." Plaintiff did not receive the draft. It remained with the bank and was not stamped "paid."

On May 14 plaintiff received notice from the food administration that it had received a letter from defendant requesting it to bring about a settlement, saying: "It is the policy of the food administration first and foremost to see that food products are conserved and gotten in to market as directly as possible, and not to settle legal disputes between parties. However, we are always willing to do what we can to bring about a settlement. To this end will you please immediately send to this office all documents, telegrams, letters and correspondence which took place between you and the Bad Axe Grain Co. relative to the sale and shipment of this car?" On May 24 plaintiff received from the administration a decision determining the controversy against it without a hearing. The administration then requested the bank to remit the money in its possession to the defendant. From such decision plaintiff appealed to Washington. Pending appeal the administration notified plaintiff that it had a request from the defendant that the beans be sold, and at the same time it directed plaintiff to dispose of the same. On July 19 it also directed the bank to remit to defendant $5,000 of the funds in its hands, pursuant to an understanding with the plaintiff, which was done. The decision of the commission was affirmed in Washington, and on September 4 the department directed the bank to remit the balance of the funds to the defendant. The bank refused to comply with the request and the bringing of this action followed. Subsequently plaintiff disposed of the beans, receiving in gross therefor the sum of $5,256.82.

This action was brought September 12, 1918, when the Merchants National Bank was summoned as garnishee and disclosed the sum of $2,810.60 in its hands. Thereafter the Second National Bank of Saginaw, pursuant to an order of court, appeared and filed a complaint in intervention, claiming title to the fund so disclosed. The trial court, after trial, ordered judgment for plaintiff and against defendant in the sum of $3,047.93, with interest, and that plaintiff is entitled to receive the $2,810.60 held by the garnishee, in part payment of such judgment; that plaintiff was entitled to judgment against the

intervener; that the complaint in intervention be dismissed upon the merits with prejudice; that the intervener is not the owner of and has no right, title or interest in or to the $2,810.60 in the hands of the garnishee; that it be forever barred and precluded from any interest therein, and that plaintiff recover its costs and disbursements against the intervener.

The issues upon this appeal were tried and submitted upon the pleadings and proofs of the plaintiff and intervener. No point is urged but that the intervener is the owner of the draft, and that it was transmitted to the garnishee for collection in the usual course of business. Plaintiff refused to pay the draft upon the ground that the beans were not according to contract. The money was turned over to the bank, not in payment of the draft, but to be held by the bank until the difference as to the quality of the beans was adjusted between the parties to the contract. This is the version of the situation found and adopted by the trial court, and it is well supported by the proofs in the case. The plaintiff had a right to name the conditions upon which it left the money with the bank. The bank was acting in no way for plaintiff. It was acting for intervener. It delivered the bill of lading upon receiving the money at the suggestion of the food commission. It retained the money until July 19, when $5,000 was remitted to the intervener at the request of the food administration and with the consent of plaintiff. Intervener received and retained that money. It must have been familiar with the entire situation, as indicated by its letter of September 26. It requested the St. Paul bank to remit the balance pursuant to the direction of the food administration. The proofs amply sustain the findings of the trial court that the funds in the St. Paul bank were the property of plaintiff and not of the intervener, and that plaintiff was entitled thereto.

Affirmed.